Myrna S. Howell, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 12147.   Promulgated May 17, 1948.

*M. Alfred Roemisch, Esq.,* for the petitioner.
*Howard M. Kohn, Esq.,* for the respondent.

864

OPINION.

VAN FOSSAN, *Judge*: The notice of deficiency upon which this proceeding is based is addressed to "Dr. Charles J. Howell and Mrs. Myrna S. Howell, Husband and Wife." The wife, Myrna S. Howell, alone appealed. She disclaims liability for the deficiencies in income tax and penalties asserted by the Commissioner for the years 1940, 1941, and 1942 on the grounds that she had no income or deductions in such years within the meaning of the Internal Revenue Code; that she neither made nor filed a return for any of such years which would render her liable for any tax or penalty under section 51 (b) of the Internal Revenue Code, and that she is not chargeable with fraud with intent to evade any tax for the years involved.

Both the petitioner and her husband testified. Their testimony was contradictory, vague, and evasive, except as to certain ultimate conclusions of fact. Thus, the husband, in answer to the question whether any of the understatements in income for 1940, 1941, and 1942 were the income of his wife, stated that his wife had no income whatever. He further testified that the income reported and deductions claimed in the returns involved were not the income or deductions of his wife. The wife testified that she had no income of any kind in 1940, 1941, and 1942 and that she made no return for any of such years.

Moreover, it is the position of petitioner that, since the respondent has asserted fraud penalties, the burden of proof rested upon him to prove by "clear and preponderating evidence that petitioner had specific items of income or deductions or both in each of the years involved." In this contention petitioner is in error.

The burden of proof of fraud was upon the respondent. Sec. 1112, I. R. C. Not so the proof as to the deficiencies. It is admitted by

petitioner that her husband was indicted and convicted on five counts for filing false and fraudulent income tax returns for the years 1939 to 1943, inclusive. The Commissioner determined that the net income for 1940, 1941, and 1942 as reported in the returns filed was understated in the amounts of $18,239.95, $15,192.04, and $20,075.02, respectively, and that the deficiencies were due to fraud with intent to evade tax. The petitioner does not question the correctness of the determination of deficiencies, or that her husband was guilty of fraud.

As to whether the returns were joint returns of petitioner and her husband and whether petitioner had income or deductions, the determination of the Commissioner is prima facie correct and the burden of proof to show error on his part in that respect rested upon the petitioner. *L. Schepp Co.*, 25 B. T. A. 419, 436–437; *Anderson* v. *United States*, 48 Fed. (2d) 201; and *Burnet* v. *Houston*, 283 U. S. 223.

On its face each return states that it is the joint return of Howell and his wife. The 1940 and 1942 returns bear petitioner's signature. It is not important that petitioner signed the returns in blank. Presumably, she knew what she was signing and that her husband would prepare the returns. Petitioner was uncertain as to whether the signatures on the returns were her own and reluctantly admitted that they looked like her signature. However, at the time of the investigation of the returns by the office of the Intelligence Unit of the Bureau of Internal Revenue, the returns were shown to her on November 17, 1944, and she then, without hesitation, recognized the signatures as her own. The 1941 return is not signed by petitioner. Her failure to sign that return is not alone determinative. It was held in *Joseph Carroro*, 29 B. T. A. 646, 650, that where a husband filed a joint return, without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife. The petitioner filed no separate return for 1940, 1941, or 1942. Separate returns for petitioner were filed for 1939 and 1943.

The petitioner testified that she had no knowledge of the commodity and security accounts in her name. Yet all checks covering dividends on stock held in the security accounts were mailed to petitioner at her home address. These checks bear her endorsement. There is no evidence that these checks were not received and used by petitioner as her own and for her own purposes. Moreover, contrary to petitioner's testimony, the customer's man at Prescott & Co., who had known petitioner for about ten years, testified that, when the account was opened with Loeb, Rhoades & Co. in November 1940, the petitioner personally came to the office of Prescott & Co. and deposited the $1,000 check upon the opening of the account. Again when questioned in the office of the Intelligence Unit as to the accounts, petitioner stated: "Well, it was no secret because the statements were always sent to my home and I knew by these monthly statements what was going on."

The petitioner's husband testified before us that the accounts in the name of his wife were his own accounts and that he also operated other accounts in the name of his son and his mother. There is no corroborating evidence to that effect. Nor is his testimony in accord with statements made by him at the time of the investigations of his returns, when he stated that all security and commodity transactions had been carried in his name "except for money which I have given as a present to Mrs. Howell to operate a small account."

In each return deductions for real estate taxes were claimed. In the 1940 and 1941 returns deductions for interest paid were claimed. In the 1941 return $83.65 of the $771.65 interest paid deduction was designated as "Wife's interest." Other than this, there is no explanation of such items. In fact, no attempt was made to explain any item of income or deduction in the returns.

So far as the record discloses, petitioner alone owned real property, i. e., the Painesville property and the home of petitioner and her husband at Gates Mills. Each property was mortgaged. There is no evidence that any of the interest deducted was paid upon the obligations of the husband. A husband may not deduct in his separate return taxes paid by him on real estate occupied by himself and wife as a home and held in her name and owned by her even if such property was given by the husband to the wife. *William Ainslie Colston*, 21 B. T. A. 396; affd., 59 Fed. (2d) 867; certiorari denied, 287 U. S. 640.

Petitioner acquired title to the Painesville property in 1934, long prior to her marriage to Howell. In 1941 the property was sold and in the 1941 return a loss resulting from such sale was claimed. Even though Howell expended about $1,500 on such property, the property remained that of petitioner. Furthermore, the money was expended by him to assist petitioner and not in any transaction entered into for profit. Sec. 23 (e), I. R. C.

Upon all the evidence, we have concluded as ultimate facts that petitioner had income and deductions; that the returns for 1940, 1941, and 1942 were the joint returns of petitioner and her husband; and that each of the returns was fraudulently filed with intent to evade tax.

It is true, as argued by petitioner, that this court and other courts have held that the liability of spouses filing a joint return was not joint and several and that liability for the tax should be determined in accordance with the net income attributable to each. *Frank W. Darling*, 34 B. T. A. 1062; *Ella R. Flaherty, Executrix*, 35 B. T. A. 1131; *Arthur B. Hyman*, 36 B. T. A. 202; *Celia Sedar, Executrix*, 38 B. T. A. 874; *Richard Downing*, 43 B. T. A. 1147; *Uniacke v. Commissioner* (C. C. A., 2d Cir.), 132 Fed. (2d) 781, affirming *Estate of Mary Lewis Hague*, 45 B. T. A. 104. The decisions in these cases were based upon the decision in *Commissioner v. Rabenold* (C. C. A., 2d Cir.), 108 Fed. (2d) 639, reversing B. T. A. memorandum opinion (Mar. 21, 1939); and *Cole v. Commissioner* (C. C. A., 9th Cir.), 81

Fed. (2d) 485, reversing 29 B. T. A. 602. In *Frida Hellman Cole*, 29 B. T. A. 602, this Court, then the Board of Tax Appeals, had stated in its opinion, as follows:

* * * the joint return contains no data upon which the separate taxable income of the two spouses can be computed. There is no segregation of the amounts of gross income severally received or any designation of the deductions to which each would be entitled. Since the joint return, though made by the husband, reports the income as a unit, we think it is perfectly clear that liability for the tax is joint and several and may be asserted against the collected from either spouse.

See also *Joseph Buchhalter*, 29 B. T. A. 600; *Joseph Carroro, supra;* and *Frank A. Weinstein*, 33 B. T. A. 105, in which fraud penalties were asserted.

*Cole* v. *Commissioner, supra*, was decided by the Circuit Court of Appeals December 12, 1936, and thereafter that decision was followed by the Board until the question was presented in *George W. Schoenhut*, 45 B. T. A. 812. Taxpayers relied upon *Cole* v. *Commissioner, supra*. The Board, however, upon authority of *Moore* v. *United States*, 37 Fed. Supp. 136; certiorari denied, 314 U. S. 619; rehearing denied, 314 U. S. 706; *Helvering* v. *Janney*, 311 U. S. 189; and *Taft* v. *Helvering*, 311 U. S. 195, reverted to its position taken in *Frida Hellman Cole, Executrix, supra*, despite the reversal as above noted, and held that the liability of spouses filing joint returns under section 51 (b) of the Revenue Act of 1936 was joint and several. It was further stated by the Board that decisions to the contrary made by the Board in the *Darling, Flaherty*, and *Sedar* cases would not be followed in the future. See *Miguel Jose Ossorio*, 1 T. C. 410, 415–416.

Prior to the Revenue Act of 1938, section 51 (b) did not specifically impose joint and several liability upon spouses as a condition upon the exercise of the privilege of filing joint returns. However, section 51 (b) was amended by the Revenue Act of 1938 to read as follows:

SEC. 51. INDIVIDUAL RETURNS.

* * * * * * *

(b) HUSBAND AND WIFE.—In the case of a husband and wife living together the income of each (even though one has no gross income) may be included in a single return made by them jointly, in which case the tax shall be computed on the aggregate income, and the liability with respect to the tax shall be joint and several. * * *

The section was thus amended so "that any doubt as to the existence of such liability should be set at rest." Committee on Ways and Means Report No. 1860, 75th Cong., 3d sess., pp. 29–31.[1]

Petitioner and her husband were living together in the taxable years.

---

[1] "Section 51 (b) of the bill expressly provides that the spouses, who exercise the privilege of filing a joint return, are jointly and severally liable for the tax computed upon their aggregate income. It is necessary for administrative reasons, that any doubt as to the existence of such liability should be set at rest, if the privilege of filing such joint returns is continued."

Since she elected to file a joint return with her husband, her liability with respect to the tax for 1940, 1941, and 1942 is clearly joint and several under section 51 (b) as amended and applicable here.

Section 293 (b) of the Internal Revenue Code requires, if any part of a deficiency is due to fraud with intent to evade tax, the addition to such deficiency of 50 per centum of the total amount of the deficiency. This is a civil penalty. *Helvering* v. *Mitchell*, 303 U. S. 391. It is admitted that the deficiencies for 1940, 1941, and 1942 were due to fraud with intent to evade tax. Whether the fraud is that of the husband or wife, or both, is immaterial under the statute. The liability is joint and several. The 50 per centum addition to the tax is mandatory.

Section 276 provides that, in the case of a false or fraudulent return with intent to evade tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. As stated in *Frank A. Weinstein, supra*:

* * * The provision for an unlimited period for assessment is, by the terms of the statute, an impersonal provision applying to the situation arising from a fraudulent return. As to Frank, who signed a waiver, and Sarah, who did not, the assessment upon a fraudulent return may be made at any time.

The contention of petitioner that section 51 (b) is unconstitutional is without merit. She concedes that Congress may impose joint and several liability upon spouses who elect to make joint returns. The burden of proof to show that she did not make a joint return with her husband rested upon her. She has failed to meet this burden. Hence, her liability for the deficiencies and penalties for 1940, 1941, and 1942 is joint and several.

*Decision will be entered for the respondent.*