Otis I. Pridgen, Jr. v. Commissioner.
Pridgen v. Commissioner
Docket No. 3215-63.
United States Tax Court
T.C. Memo 1967-23; 1967 Tax Ct. Memo LEXIS 239; 26 T.C.M. (CCH) 131; T.C.M. (RIA) 67023; February 9, 1967
*239 Held: Petitioner is liable for income tax deficiencies based upon embezzlements perpetrated by his wife during taxable years in which joint returns were filed. Otis I. Pridgen, Jr., pro se, 2607 Jefferson Davis Highway, Richmond, Va. Marion B. Morton, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined the following deficiencies in income taxes against the petitioner: 1957
$ 832.32
1958
1,861.89
1959
1,527.44
The only question for decision is whether petitioner is liable for income tax deficiencies based on alleged embezzlements perpetrated by his wife during the taxable years *240 1957, 1958 and 1959, of which she was found guilty in a state court. Petitioner filed joint returns with her for the years in issue. Findings of Fact Otis I. Pridgen, Jr. (hereinafter referred to as petitioner), a resident of Richmond, Virginia, and his wife, Flora Mae Pridgen (hereinafter referred to as Flora), filed their joint Federal income tax returns for the years 1957, 1958 and 1959 with the district director of internal revenue, Richmond, Virginia. In 1959 Flora had been an employee of Knox Jewelers, Inc (hereinafter referred to as Knox Jewelers), for 17 years. Flora's duties at Knox Jewelers consisted of being a bookkeeper, cashier, sales girl and general office worker, and she had nonexclusive access to the store's cash register. The cash register utilized by Knox Jewelers is a dual cash register and account-posting machine. In order for the various accounts to be closed and posted, it is necessary that a certain key be inserted into the machine. The necessity of the key is a control feature if the person responsible for recording the cash receipts on the machine does not have access to the key. However, it was the practice at Knox Jewelers to leave the key inside *241 the cash register which permitted free access to the key by anyone with access to the cash register. In 1959 a stockholder of Knox Jewelers discovered that funds were being taken from the company and the method being used. An accounting firm was hired to audit the books and records of the company to determine the amount taken. An audit was made for the period January 1, 1956, to September 14, 1959. The audit rerevealed that the account "paid on account" had been closed and reopened several times during most of the days, and each time this account was reopened the "paid on account" amount that had been punched back into the machine was a smaller amount than the total of the individual "paid on account" items up to the time this account had been closed. The examining accountants found that each time there was punched back into the machine a lesser "paid on account" figure than the total of the individual "paid on account" items to the time of closing, there was no customer account number shown for the amount punched back into the machine, and no postings were made of the repunched items to any existing customer account. The end of the day "paid on account" total shown by the machine's *242 tape did not agree with the total cash payments made by customers on their accounts, which were accurately credited to their individual accounts. Thus, the amount recorded as cash received and subsequently deposited in a bank was less than the amount actually received although each customer received accurate credit for payments on his account. The difference in cash received and recorded was not accounted for and had been removed from the cash register. The cash receipts unaccounted for and taken from Knox Jewelers were as follows for the years 1957, 1958 and 1959: 1957
Month
Amount
January
$ 558.60
February
517.00
March
203.00
April
May
June
July
110.00
August
515.00
September
$ 593.00
October
498.00
November
705.10
December
892.90
$4,592.60
1958
January
$ 779.99
February
434.30
March
629.00
April
854.50
May
820.20
June
776.00
July
690.00
August
752.00
September
694.02
October
768.45
November
777.99
December
983.00
$8,959.45
1959
January
$ 902.00
February
1,196.00
March
988.00
April
974.10
May
1,038.44
June
1,226.00
July
790.00
August
1,272.11
September 1-14
200.10
$8,586.75
Flora *243 was absent from her employment at Knox Jewelers from approximately the first week of March to approximately the first week of July in 1957, from approximately mid-February to early March in 1958 and for one week in July in 1959. After the audit was completed, Flora was indicted in the Hustings Court of the City of Richmond for the felony of having embezzled approximately $23,000 from Knox Jewelers since January 1, 1957. In this criminal proceeding, Flora was represented by counsel, pleaded not guilty to the charge, waived her right to trial by jury, was tried, convicted and found guilty on March 4, 1960. Flora was sentenced to five years in the penitentiary, but the sentence was suspended for ten years conditioned on good behavior. In July 1962, following audit of petitioner's and Flora's joint income tax returns for 1957, 1958 and 1959, Flora, on the advice of counsel signed a waiver of restrictions on assessment and collection (Form 870) of income tax deficiencies for 1957, 1958 and 1959 in the respective amounts of $832.32, $1,861.89 and $1,527.44. The notice of deficiency mailed to petitioner determined these identical deficiencies and stated that they resulted from the inclusion *244 of Flora's additional income from Knox Jewelers in each year. The preceding deficiencies were assessed against Flora on November 2, 1962, and she has made no payments on these assessed deficiencies. Flora has had no intention of paying the assessed deficiencies for the purpose of prosecuting a refund claim. Opinion The proceeds from an embezzlement constitute gross income taxable to the embezzler in the year of receipt under the rule of James v. United States 366 U.S. 213 (1961). The Supreme Court reached this new position by overruling its prior decision in Commissioner v. Wilcox, 327 U.S. 404 (1946). The James rule has been applied retroactively to taxable years antedating the enunciation of the new rule in 1961. Geiger's Estate v. Commissioner, 352 F. 2d 221 (C.A. 8, 1965), affirming a Memorandum Opinion of this Court, certiorari denied 382 U.S. 1012 (1966); Marvin E. Nerem, 41 T.C. 338 (1963). Therefore, embezzled funds would constitute gross income during 1957, 1958 and 1959, the taxable years here in question. Petitioner argues that Flora was not guilty of embezzling funds from Knox Jewelers. The sole support *245 for this argument is Flora's testimony professing innocence. In contrast, there are many factors indicative of Flora's guilt. She was convicted of embezzling the funds by the Hustings Court of the City of Richmond. Furthermore, the audit revealed that no money was taken during the months when Flora was absent from her employment and smaller amounts than usual were taken when she was away for parts of months. Petitioner has not convinced us of his wife's innocence, and he has thus failed to sustain his burden of proof. The amounts taken from Knox Jewelers are not contested. We hold, therefore, that respondent properly added, in the designated amounts embezzled funds to Flora's gross income. Petitioner's liability for income taxes on the additions to Flora's gross income in 1957, 1958 and 1959 is based upon his filing of joint returns with Flora for those taxable years. Section 6013(d)(3) of the Internal Revenue Code of 1954[1] provides for joint and several liability for the tax on the aggregate income where a husband and wife elect to file a joint return. *246 Petitioner contends that he should not be held liable for the additional tax merely because of filing a joint return because "the federal government has failed to post a warning to the fact that when two persons file a joint return that one party would be responsible for the other party." Section 6013(d)(3) makes it clear that liability for a joint return will be joint and several, and this liability is not limited by the lack of knowledge or the absence of beneficial enjoyment by a spouse. O'Dell v. United States, 326 F. 2d 451 (C.A. 10, 1964); Meyer J. Safra, 30 T.C. 1026 (1958); Myrna S. Howell, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949). Only in exceptional cases where the evidence establishes that the return is not in fact a joint return can a spouse avoid liability for the tax due thereon. This is not such a case. We hold that petitioner is liable for taxes on the unreported income attributable to his wife by reason of his filing joint returns. Respondent's deficiency determination is therefore upheld. Decision will be entered for the respondent. Footnotes
1. Sec. 6013. Joint returns of income tax by husband and wife. * * *
(d) Definitions. * * *
(3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.↩